UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JAMES GONZALES, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of the Social ) <br> Security Administration, ) <br> ) <br> Defendant. ) <br> _____ ) | Case  No. CV 08-1108 AJW <br><br> MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff, aged 25, filed an application for SSI benefits on October 13, 2005, alleging that he became disabled on May 1, 2005, due to depression with psychotic features. [JS 2; Administrative Record ("AR") 105]. In a written hearing decision dated August 31, 2007, an administrative law judge ("ALJ") found that plaintiff had severe impairments consisting of a psychotic disorder, not otherwise specified ("NOS") and a personality disorder with schizophrenic features. [AR 11]. The ALJ further found that plaintiff's impairments left him

1  with a residual functional capacity ("RFC") for work at any exertional level, with nonexertional
2  impairments restricting him to simple, repetitive tasks that do not involve working with the
3  public or around dangerous machinery, and require no safety operations or hypervigilance. [AR
4  12]. The ALJ found that plaintiff's RFC did not preclude him from performing his unskilled,
5  light past work as a dog bather as he actually performed it. [AR 14]. Alternatively, the ALJ
6  found that plaintiff could perform unskilled jobs available in significant numbers in the national
7  economy, such as the jobs of assembler and hand packager. [AR 14-15]. The Appeals Council
8  denied plaintiff's request for review. [JS 2; AR 1-5].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commr of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

**Medical opinion evidence**

**State agency physicians**

Plaintiff contends that the ALJ failed properly to consider a nonexamining state agency physician's findings that plaintiff has moderate work-related functional limitations. [See JS 3-7].

1  D. L. Williams, M.D., completed a Mental Residual Functional Capacity Assessment form on
2 November 30, 2005, indicating that plaintiff was not limited or not significantly limited in twelve of the
3 twenty work-related functional abilities rated on the form, and was "moderately limited" in the remaining
4 eight abilities, including, for example, the ability to understand, remember, and carry out detailed
5 instructions. [AR 190-193]. The ALJ did not discuss that assessment; however, he summarized the findings
6 made by Dr. Williams on a "Psychiatric Review Technique" ("PRT") form completed on the same date. [AR
7 14, 176-189]. On the PRT form, Dr. Williams found that plaintiff had a severe psychotic disorder with
8 persistent delusions or hallucinations, but that his psychotic and depressive symptoms were improving
9 steadily over time with medication. [AR14, 176, 178-179]. Dr. Williams concluded that plaintiff's
10 impairment did not meet or equal a listed impairment because he had only a mild limitation in activities of
11 daily living, a moderate limitation in maintaining social functioning, and maintaining concentration,
12 persistence, and pace, and no repeated episodes of decompensation. [AR 14, 186-187]. Remarking that "the
13 alleged degree of functional limitation is not fully supported by the objective findings," Dr. Williams wrote
14 that plaintiff appeared capable of performing nonpublic, simple, repetitive tasks. [AR 14, 193].
15 Nonexamining state agency psychiatrist, K.D. Gregg, M.D., affirmed Dr. Williams's opinion as written. [AR
16 194-195].

17  Where the opinion of a treating or examining physician is uncontroverted, the ALJ must provide
18 clear and convincing reasons, supported by substantial evidence in the record, for rejecting it. If contradicted
19 by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate
20 reasons that are based on substantial evidence in the record. Batson v. Comm'r of Social Sec. Admin., 359
21 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148-49 (9th Cir. 2001); Lester v.
22 Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

23  A nonexamining physician does not have the opportunity to conduct an independent examination
24 and does not have a treatment relationship with the claimant, so a nonexamining source opinion ordinarily
25 carries less weight than that of an examining or treating physician. Andrews v. Shalala, 53 F.3d 1035, 1040-
26 41 (9th Cir. 1995)(explaining that more weight is given to the opinions of treating and examining physicians
27 because they have a greater opportunity to know and observe the patient as an individual). Standing alone,
28 the opinion of a nonexamining physician cannot constitute substantial evidence that justifies the rejection

1  of the opinion of either an examining physician or a treating physician. Morgan, 169 F.3d at 602; Lester v.
2  Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). When supported by other evidence in the record, however,
3  the opinion of a nonexamining physician may serve as substantial evidence. Andrews, 53 F.3d at 1041;
4  Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989).

5  Although the ALJ did not discuss the specific functional limitations reflected in Dr. Williams's
6  mental RFC assessment form, he considered and adopted Dr. Williams's conclusion that, notwithstanding
7  those functional limitations, plaintiff could perform simple, repetitive tasks that do not involve working with
8  the public, provided his job did not require hypervigilance, safety operations, and working around dangerous
9  machinery were not required. [AR 12]. Accordingly, the ALJ did not ignore or reject Dr. Williams's
10 opinion, and he gave that opinion appropriate deference.

**Treating psychiatrist**

12 Plaintiff also contends that although the ALJ "briefly mention[ed] portions of" a May 2005 mental
13 status examination performed by Jesse DeVera, M..D., a staff psychiatrist who treated plaintiff at the San
14 Bernardino Department of Behavioral Health ("County Behavioral Health"), the ALJ did not discuss Dr.
15 DeVera's diagnosis of a psychotic disorder or the Global Assessment of Function ("GAF") score of 50. [See
16 AR 162-175, 197-210]. Plaintiff argues that Dr. DeVera's reports establish that plaintiff "suffers from a
17 severe mental impairment that causes significant limitations," and that the ALJ did not properly consider
18 all of the findings made by Dr. DeVera. [See JS 8-12]. Plaintiff further contends that the ALJ improperly
19 rejected a "Work Capacity Evaluation (Mental)" signed by Dr. DeVera on August 30, 2006. [See JS 15-16;
20 AR 197-198].

21 The ALJ said that progress notes from County Behavioral Health indicated that plaintiff "received
22 routine care for a depressive disorder" and "do not reflect any acute mental health crisis requiring inpatient
23 hospitalization or intensive treatment." [AR 13]. The ALJ further noted that on mental status examination,
24 plaintiff exhibited normal memory, speech, and thought processes, was fully oriented, had fair insight and
25 judgment, and endorsed visual hallucinations and paranoia. [AR 13]. The ALJ added that

26  [o]ver the course of treatment, the claimant's mood became more stable, he said he was
27  doing better, was less paranoid, had fewer hallucinations, and his mood was becoming more
28  stable. Treating notes from Dr. DeVera also indicate that the claimant was improving and

> doing well on his medications. . . .
>
> . . .
>
> Dr. DeVera completed a mental work capacity form and marked most domains as marked limitation; yet his own treating notes indicate that the claimant was improving and doing well on his medications. His treating notes show the claimant's memory was intact, he was doing alright, had only occasional bad moods, and was alert and oriented. The auditory hallucinations were getting better.

[AR 13-14 (internal citations omitted)].

Contrary to plaintiff's argument, the ALJ did not reject either Dr. DeVera's diagnosis or his conclusion that plaintiff had a severe mental impairment that caused significant functional limitations. Rather, the ALJ found that plaintiff had a severe psychotic disorder that caused nonexertional limitations that significantly restricted the jobs plaintiff could perform, but did not preclude him from working altogether.

Furthermore, the ALJ did not err in rejecting Dr. DeVera's August 2006 mental functional assessment, which was reflected on a "check the box" evaluation form. [AR 197-198]. The ALJ permissibly rejected Dr. DeVera's opinion because it was inconsistent with his treatment notes, which indicated that although he still exhibited some symptoms, such as some paranoia or blunted affect, plaintiff was responding well to medication and doing pretty well. [See AR 200 (July 20, 2007 progress note stating that plaintiff was "becoming more stable" and told Dr. DeVera he was "doing alright"); AR 202 (May 24, 2007 progress note stating that plaintiff is "doing well [with] the current regimen" ); AR 203 (May 18, 2007 progress note stating that plaintiff was "improving" and reported that he was "doing alright"); AR 204 (April 20, 2007 progress note stating that plaintiff reported "less voices" but still had paranoia); AR 205 (February 16, 2007 progress note stating that plaintiff was "improving" and said he was "able to separate what is read and what is not"); AR 208 (November 7, 2006 progress note stating that plaintiff "is doing fairly well except for some hallucinations and some lability of emotion"); AR 212 (April 2006 progress note stating that plaintiff said he was "fine," his mood was "getting better," and that he still heard voices but did not have paranoia)]. Dr. DeVera's notes, moreover, do not contain clinical findings substantiating the degree of limitation indicated on the evaluation form. See Bayliss, 427 F.3d at 1217 (noting that "an ALJ

need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings," and holding that the ALJ properly rejected a treating physician's opinion that was contradicted by the doctor's treatment notes); Connett v. Barnhart, 340 F.3d 871, 874-875 (9th Cir. 2003) (holding that the ALJ did not err in rejecting the controverted opinion of a treating physician whose restrictive functional assessment was not supported by his treatment notes); see also Batson, 359 F.3d at 1195 & n.3 (upholding the ALJ's rejection of an opinion that was "conclusionary in the form of a check-list," and lacked supporting clinical findings). Accordingly, the ALJ provided specific, legitimate reasons supporting his assessment of Dr. DeVera's opinion.

The GAF score of 50 given by Dr. DeVera in his initial evaluation of plaintiff in March 2005 does not compel a different conclusion.[1] The Commissioner has not endorsed the use of the GAF scale in the social security disability context, and the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65 (August 21, 2000). The ALJ found that plaintiff had a severe mental impairment and gave legally adequate reasons for rejecting Dr. DeVera's functional assessment. Even if the GAF score is accepted at face value, it describes plaintiff's current condition in May 2005, before he started treatment with Dr. DeVera, and before plaintiff filed his application for benefits in October 2005.[2] Therefore, the ALJ's failure to discuss plaintiff's GAF score was not legal error. See Howard v. Comm'r of Social Sec., 276 F.3d 235, 241 (6th Cir. 2002)

---

[1] The GAF score is a "multiaxial" assessment that reflects a clinician's subjective judgment of a patient's overall level of functioning by asking the clinician to rate two components: the severity of a patient's psychological *symptoms,* or the patient's psychological, social, and occupational *functioning*. The GAF score is the lower of the symptom severity score or the functioning severity score. A GAF score of 41 through 50 denotes serious symptoms, such as suicidal ideation or severe obsessional rituals, or any serious impairment in social, occupational, or school functioning, such as the absence of friends or the inability to keep a job. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV") Multiaxial Assessment, 27-36 (rev. 2000)); see also Morgan, 169 F.3d at 598 n.1("Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient.").

[2] Plaintiff is not eligible for to receive SSI benefits for the period prior to November 2005 because SSI benefits are payable no earlier than the month following the month in which the application was filed. See 20 C.F.R. §§ 416.330, 416.335.

1  ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to
2  the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not
3  make the RFC inaccurate."); Roach v. Astrue, 2009 WL 2407961, at *4 (C. D. Cal. 2009)(holding that the
4  ALJ erred in failing to address a treating source GAF score of 47 where he "provided [no] other rationale
5  for otherwise rejecting a treating physician's opinion of a claimant's overall mental functioning, and such
6  opinion–as expressed in a GAF score–clearly contradicts the ALJ's finding" that the claimant had no severe
7  mental impairment).

**Social worker's opinion**

Plaintiff contends that the ALJ erred in failing to consider the opinion of Elizabeth Ustick, M.S.W., a social worker at County Behavioral Health who completed a "clinical assessment update" of plaintiff in May 2005. [See JS 7-8; AR 175]. In her report, Ms. Ustick gave plaintiff a "severe" dysfunction rating under County Behavioral Health standards. She concluded that plaintiff has a "[d]istorted view of reality, is moody and isolative when anger and irritability build, could not sustain parenting alone, and could not hold a job at this time." [AR 175].  Ms. Ustick noted that plaintiff was well-groomed and cooperative and did not report or present with disorganized speech, grossly disorganized or catatonic behavior, or affective flattening.  Plaintiff told her that he began experiencing auditory and visual hallucinations as a teenager and continued to do so, but that he got along "fairly well without medication" because he was "used to the crazy thoughts and things." He said that was raising his son "with a lot of help from mom." He said that he worked as a dog bather in a dog grooming business, short order cook, and laborer (shoveling cement). [AR 174-175].

Evidence from an "acceptable medical source" is required to establish the existence of a "medically determinable impairment," that is, an impairment that can serve as the basis for a finding of severity or disability. See 20 C.F.R. §§ 404.1508, 404.1513(a), 416.980, 416.913(a). Unlike a licensed physician or psychologist, a social worker is not an "acceptable medical source" whose findings can establish the existence of a medically determinable impairment.  A social worker falls into the category of "other sources."  See 20 C.F.R. §§ 404.1513(d), 416.913(d).  The ALJ "may also use" information in the record from "other sources" "to show the severity" (but not the existence) of a claimant's medically

determinable impairments and how those impairments affect the ability to work  20 C.F.R. §§ 404.1513(d), 416.913(d).  Ordinarily, however, the ALJ is not required to give that information the same weight as information from an acceptable medical source.  See Gomez v. Chater, 74 F.3d 967, 970-971 (9th Cir.) (explaining that opinions from "other sources" may be given less weight than those from "acceptable medical sources" under the governing regulations), cert. denied, 519 U.S. 881 (1996); see generally Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *1-*6.

The ALJ discussed and considered the reports of Dr. DeVera, who was an acceptable medical source and who began treating plaintiff shortly after he was evaluated by Ms. Ustick. Dr. DeVera did not sign Ms. Ustick's report, nor is there other evidence in the record suggesting that he adopted all of her conclusions. Moreover, Ms. Ustick's May 2005 report was a one-time evaluation, conducted before plaintiff began psychiatric treatment with Dr. DeVera, and several months before he filed his SSI benefits application on October 13, 2005. [JS 2]. Accordingly, the ALJ permissibly disregarded Ms. Ustick's report.

**Past relevant work**

Plaintiff contends that the ALJ's finding that plaintiff can perform his past relevant work as a dog bather is inconsistent with plaintiff's RFC as articulated by the ALJ. [See JS 10-14]. Plaintiff argues that the Dictionary of Occupational Titles ("DOT") states that the job of dog bather entails a reasoning level of 3, and that a reasoning level of 3 is inconsistent with plaintiff's RFC for "simple, repetitive" work. [See JS 17-24].

DOT jobs classifications include a "General Educational Development" ("GED") component comprising three  scales:  Reasoning Development, Math Development, and Language Development.  The GED reasoning, math, and language development scales range from Level 1 (low) to Level 6 (high).  Level 2 reasoning is defined as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." See DOT, Appendix C, Components of the Definition Trailer (4th ed. rev.1991). Level 3 reasoning is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT, App. C.

8

1 A claimant is "not disabled" if he retains the residual functional capacity to perform the
2 "actual functional demands and job duties of a particular past relevant job" or the "functional
3 demands and job duties of the occupation as generally required by employers throughout the
4 national economy." Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001) (quoting SSR 82-
5 62); see also Burch, 400 F.3d at 679; Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986) ("The
6 claimant has the burden of proving an inability to return to his former type of work and not just
7 to his former job."). "The claimant is in the best position to describe just what he or she did
8 in [past relevant work], how it was done, what exertion was involved, what skilled or semiskilled
9 work activities were involved, etc." SSR 82-41, 1982 WL 31389, at *4. Where, however, the
10 ALJ's step-four finding rests on a determination that the claimant can perform her past relevant
11 work "as generally performed," rather than as actually performed in a particular past job, the
12 DOT or a vocational expert must be consulted to determine the "functional demands and job
13 duties of the occupation as generally required by employers throughout the national economy."
14 Pinto, 249 F.3d at 845-846.

15 The ALJ found that plaintiff could perform his past relevant work as a dog bather as
16 plaintiff actually performed that job, not as generally required by employers. Therefore, the job
17 classification information in the DOT does not control. In his vocational report, plaintiff stated
18 that his past job as a dog bather at Petco did not require use of any machines or equipment,
19 involved no technical knowledge or skills, did not require writing or completing reports, and did
20 not involve supervising others. [AR 115]. Plaintiff testified that he left that job "[b]ecause I
21 wanted to take a class, and then – but then I started thinking that the manager like was against
22 me. And then I just walked out one day." [AR 36]. Nothing in plaintiff's vocational report or
23 testimony suggests that the job of dog bather as he actually performed it required more than
24 "simple, repetitive tasks," as envisioned by the ALJ's RFC finding. Accordingly, plaintiff's
25 argument to the contrary lacks merit.

## Conclusion

27 The Commissioner's decision is supported by substantial evidence and is free of legal
28 error. Accordingly, the Commissioner's decision is **affirmed.**

**IT IS SO ORDERED.**

DATED: November 5, 2009

ANDREW J. WISTRICH
United States Magistrate Judge